IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **RONALD KADLUBOSKI,**     : | No. 3:06cv2062 |
| **Plaintiff**            : | |
| : | (Judge Munley) |
| : | |
| **v.**                    : | |
| : | |
| **RONALD TRIMBLE, and**   : | |
| **CITY OF WILKES-BARRE,** : | |
| **Defendants**           : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

### MEMORANDUM

Before the court are the parties' motions for summary judgment. Having been fully briefed and argued, the matters are ripe for disposition.

**Background**

Plaintiff Robert Kadluboski runs a towing company which operates under the name City-Wide Towing. (Defendants' Statement of Undisputed Material Facts Filed Pursuant to Local Rule 56.1 (hereinafter "Defendant's Statement") (Doc. 32) at ¶ 1).[1] The dispute in this case surrounds the cancellation of a towing contract between plaintiff and Defendant City of Wilkes-Barre.

Plaintiff first entered into a towing contract with the City on October 15, 1996. (Defendant's Statement at ¶ 3). This contract required that the plaintiff execute all

---

[1] Both parties filed motions for summary judgment, as well as statements of fact in support of those motions. The parties also filed answers to the other party's statement of facts. The court will cite to the plaintiff's initial statement of facts for those facts which are undisputed. The court will reference the other statements of facts when facts are in dispute.

towing duties "in a courteous, professional, good and workmanlike manner." (Id.). The contract also required that the City immediately notify the plaintiff of any problem arising from plaintiff's conduct of the operation, and give him 45 days to cure the problem. (Id.). Failure to solve the problem within 45 days would lead to arbitration conducted by a named neutral third party, identified in the contract as Al Boris. (Id.).

The contract expired in 2000. (Id. at ¶ 4). Plaintiff continued to operate as the exclusive towing company for the city at that time. (Id.). Plaintiff entered into another contract with Defendant City of Wilkes-Barre to conduct the city's towing operations for a five-year period, beginning January 1, 2002 and ending December 31, 2006. (Id. at ¶ 5). The City retained the right to renew the contract on a month-to-month basis for an additional year after the contract ended. (Id. at ¶ 5). That contract named Defendant Ronald Trimble as the neutral arbitrator. (Id. at ¶ 8).

At some time in June 2001 (before the beginning of the second contract), Wilkes-Barre City Council members requested from Assistant Town Clerk Cathy Payne copies of all complaints registered against plaintiff related to his performance of towing activities. (Id. at ¶ 6). Plaintiff disputes the contents of the complaints filed with the City. (Plaintiff's Answer to Defendant's Statement of Material Facts (Doc. 38) (hereinafter "Plaintiff's Answer") at ¶ 6).

By letter dated July 29, 2004, Mayor Thomas Leighton informed plaintiff that his performance under the contract terms was undergoing evaluation. (Defendant's Statement at ¶ 7). Leighton informed plaintiff that a large number of complaints

about his work had been lodged and that the City believed he had not performed his work in the courteous, professional and workmanlike fashion required by the contract. (Id.). Plaintiff contends that this correspondence did not cite to any specific complaints or describe the nature of the complaints in general. (Plaintiff's Answer at ¶ 7). He also argues that he had a forty-five day period to cure the complaints cited by defendant. (Id.). Since no further complaints were reported, plaintiff insists that he must have cured the complaints and the contract should not have been terminated. (Id.).

In a letter dated October 12, 2004 and copied to plaintiff, Mayor Leighton requested that Defendant Ronald Trimble, who was the neutral third party arbitrator under the 2002 contract, evaluate plaintiff's performance to determine whether he was in violation of the document's requirements. (Defendants' Statement at ¶ 8). Plaintiff insists that this letter did not reference any specific complaints between July and October 2004. (Plaintiff's Answer at ¶ 8).

Trimble notified the Mayor and plaintiff by letter on November 5, 2004 that he had determined that plaintiff violated the terms of the contract and that City Wide Towing should be terminated as exclusive towing services provider for the City. (Defendants' Statement at ¶ 9). Plaintiff contends that this letter did not cite any specific contract breaches or failures to cure a breach. (Plaintiff's Statement at ¶ 9). Plaintiff also contends that Trimble testified in deposition that he held a hearing regarding plaintiff's performance where only City officials and employees were

present. (Id.).  Trimble did not give plaintiff notice of this hearing or take any testimony from him. (Id.).  Trimble testified at his deposition that he "did not care" what plaintiff had to say about the complaints against him. (Id.).

The contracts that plaintiff signed in 1996 and 2002 both had a clause whereby plaintiff agreed to use arbitration as the sole means for settling disputes under the contract.  Plaintiff contends that these provisions do not apply because defendant summarily breached the contract.  Defendant likewise contends that the contract he signed did not provide a pre-termination hearing right; plaintiff asserts that this contract should be read to include the requirement that the neutral arbitrator conduct a full hearing before terminating contract rights.

Plaintiff filed the instant action (Doc. 1) on October 19, 2006.  The complaint contains two counts.  The first, brought pursuant to 42 U.S.C. § 1983, alleges that the cancellation of plaintiff's towing contract with the city violated his procedural due process rights under the 14th Amendment.  Plaintiff also alleges that this cancellation was arbitrary, capricious, irrational and contrary to law and thus violates his substantive due process rights.  Count II raises a breach of contract claim pursuant to Pennsylvania law.

After the parties engaged in discovery, both sides filed motions for summary judgment.  The parties then briefed their motions, bringing the case to its present posture.

**Legal Standard**

4

This case is before the court pursuant to the parties' motions for summary judgment.  Granting summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (citing FED. R. CIV. P. 56(c)). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. International Raw Materials, Ltd. v. Stauffer Chemical Co., 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. Anderson, 477 U.S. at 248 (1986).  A fact is material when it might affect the outcome of the suit under the governing law. Id.  Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex v. Catrett, 477 U.S. 317, 322 (1986).

**Discussion**

Both sides filed motions for summary judgment, plaintiff on his procedural due process claim, defendants on all of plaintiff's claims.  The court will first address the procedural due process claim and then the other claims.

### A.  Procedural Due Process Claim

Each side seeks summary judgment on this claim.  Plaintiff argues that uncontroverted evidence indicates that  defendants did not provide him with any meaningful process before depriving him of his towing contract.  Defendants contend that plaintiff was due no process because his towing contract did not constitute a property interest protected by the Federal Constitution.

"The fourteenth amendment prohibits state deprivations of life, liberty or property without due process of law."  Robb v. Philadelphia, 733 F.2d 286, 292 (3d Cir. 1984).  In the context of procedural due process, "[a]pplication of this principal requires a familiar two-stage analysis: we must first ask whether the asserted individual interests are encompassed within the fourteenth amendment's protection of 'life, liberty, or property'; if protected interests are implicated, we then must decide what procedures constitute 'due process of law.'"  Id. (quoting Board of Regents v. Roth, 408 U.S. 564, 569-72 (1972)).

The first question for the court, then, is whether plaintiff had a protected property interest in the continuation of his towing contract.  "Property interests are created and defined by state law."  Berlanti v. Bodman, 780 F.2d 296, 299 (3d Cir.

6

1985). "The text of the Fourteenth Amendment speaks of 'property' without qualification, and it is well-settled that state-created property interests, including some contract rights, are entitled to protection under the procedural component of the Due Process Clause." Nicholas v. Pennsylvania State University, 227 F.3d 133, 140 (3d Cir. 2000). "The hallmark of property . . . is an individual entitlement grounded in state law, which cannot be removed except 'for cause.'" Logan v. Zimmerman Brush Co., 455 U.S. 422, 430 (1982) (quoting Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1, 11-12 (1978)).

Here, the parties disagree over the existence of a protected property interest in plaintiff's towing contract. The Third Circuit Court of Appeals has found that "it is beyond dispute today that a contract with a state entity can give rise to a property right under the Fourteenth Amendment." Linan-Faye Construction Co., Inc. v. Housing Authority of the City of Camden, 49 F.3d 915, 931 (3d Cir. 1995). Two types of contracts create a protected property interest: "(1) where 'the contract confers a protected status, such as those 'characterized by a quality of either extreme dependence in the case of welfare benefits, or permanence in the case of tenure, or sometimes both, as frequently occurs in the case of social security benefits'"; or (2) where 'the contract itself includes a provision that the state entity can terminate the contract only for cause.'" Id. at 932 (quoting Unger v. National Residents Matching Program, 928 F.2d 1392, 1399 (3d Cir. 1991)).

The contract in question provided two clauses describing how Defendant City

7

of Wilkes Barre could end the agreement. The first, contained in paragraph 14, allowed the City to terminate the contract after providing seven days notice if the plaintiff filed for bankruptcy, went into receivership, consistently failed to provide workers or materials for jobs, fell behind in payments, or "persistently disregarde[d] laws, ordinances, rules, regulations or orders of any public authority having jurisdiction, or otherwise is guilty of a violation of a provision of the Contract documents." (Wilkes-Barre City Towing Contract, Appendix to Plaintiff's Motion for Summary Judgment (Doc. 29) (hereinafter "Towing Agreement") at ¶ 14). The second, contained in paragraph 15p, provided that "[t]he Contractor agrees to perform all work in a courteous, professional, good and workmanlike manner." (Id. at ¶ 15p). If the towing services provider did not satisfy this requirement, the City was required to notify him immediately. (Id.). The contract provided the contractor forty-five days to cure the problem, but "[i]f the discrepancy is not cured in the above time or if it is not cured to the satisfaction of the City, the issue will be turned over to Ron Trimble, a neutral third party who will be the sole arbiter as to whether these criteria are being met and whether the city shall be allowed to discharge the Contractor." (Id.). The City terminated the contract pursuant to this second provision.

The court finds that plaintiff had a protected property interest in this contract. The terms of the contract allowed the city to terminate the contract only for cause, either because the plaintiff was no longer able or willing to meet its terms, or

because he failed to perform his duties in a professional manner. Such a contract creates a protected property interest, and the question before the court, therefore, is whether plaintiff received the process he was due before the City terminated his contract.[2]

"[O]nce it is determined that the Due Process Clause applies, 'the question remains what process is due.'" Loudermill, 470 U.S. at 541 (quoting Morrisey v. Brewer, 408 U.S. 471, 481 (1972)). Courts have found that due process "is not a technical conception with a fixed content unrelated to time, place and circumstances.'" Matthews v. Eldridge, 424 U.S. 319, 334 (1976) (quoting Cafeteria Workers v. McElroy, 367 U.S. 886, 895 (1961)). Instead, courts are to inquire into the circumstances of the deprivation to determine what process is required. Id. Accordingly, "'[consideration] of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action.'" Wolff v. McDaniel, 418 U.S. 539, 560 (1974) (quoting McElroy, 367 U.S. at 895). Three factors generally guide this determination: "First, the private interest that will be affected by the official action;

---

[2] The defendants cite to Vartan v. Nix, 980 F. Supp. 138 (E.D. Pa. 1997) for the proposition that a contract that allows termination only for cause does not provide a protected property interest. The court is unconvinced by the reasoning in this case; the court in Vartan sought to confine the property interest protected by the Due Process Clause to cases implicating public employment, not other contracts to perform services for a government agency. This court finds no such limitation stated in the relevant cases; we must therefore determine whether a "just cause" provision exists in this particular contract.

9

second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Matthews, 424 U.S. at 335.  The Third Circuit Court of Appeals has concluded that "[a]t a minimum, due process requires notice and a hearing." Wilson v. MVM, Inc., 475 F.3d 166, 178 (3d Cir. 2007). Still, "when that notice and hearing must be provided and how intensive the hearing must be is a determination that depends on the balancing of [the] three interests" articulated in Matthews. Id.

The task for the court, then, is to determine whether plaintiff received the process he was due under the circumstances.  Here, plaintiff received notice that he had not complied with the terms of the contract in the form of a letter stating that complaints had been raised about his performance.  Plaintiff had allegedly failed to perform in the courteous and professional manner required by the paragraph 15p of that contract.  A letter informed the plaintiff of those claims.  Plaintiff did not, however, receive an opportunity to respond to the allegations referenced in the letter.  The terms of the contract sent the complaint to an arbitrator, who apparently read the complaints, determined them valid, and terminated the contract.  All three factors articulated by the courts for determining the adequacy of the procedures weigh against the defendants in this case.   The towing contract with the City

represented a large portion of plaintiff's business, and potentially devastating consequences to the private interest involved could follow the demise of that contract. The risk of an erroneous deprivation was large, given that plaintiff could not respond to the complaints against him. Finally, alternative procedures were available. The arbitrator could have performed an arbitrator's job; he could have heard both sides of the argument. Instead, plaintiff had no opportunity to provide the arbitrator his side of the story, even though the arbitrator conducted an investigation and apparently interviewed witnesses. In short, the failure to hear from plaintiff on this issue means that he did not receive the opportunity to be heard required by the United States Constitution.[3]

---

[3] Defendants argue that Pennsylvania law provides plaintiff with an opportunity to challenge the City's decision to terminate the contract in court. The plaintiff did not pursue that opportunity. Because an appeal of the decision in state court would have provided plaintiff with all of the process he was due, defendants contend that plaintiff's failure to appeal constituted a waiver of his procedural due process rights. The statute to which plaintiff cites, 2 Pa. C.S. § 752, however, does not provide process to the plaintiff in this case. That statute provides that "[a]ny person aggrieved by an adjudication of a local agency who has a direct interest in such adjudication shall have the right to appeal therefrom to the court vested with jurisdiction of such appeals by or pursuant to Title 42 (relating to judiciary and judicial procedure.)" 2 PA. C.S. § 752. Under that statute, an adjudication is "[a]ny final order, decree, decision, determination or ruling by an agency affecting personal or property rights, privileges, immunities, duties, liabilities or obligations of any or all of the parties to the proceeding in which the adjudication is made." 2 PA. C.S. § 101. The statute defines an "agency," in relevant part, as "any . . . municipal or other local authority, or any officer or agency of any such political subdivision or local authority." Id. The arbitrator here was appointed pursuant to the terms of a contract between the parties, and did not serve as an officer or agent of the City. Accordingly, plaintiff could not avail himself of the courts under Pennsylvania law to overturn the arbitrator's decision. In addition, the purpose of arbitration under Pennsylvania law, outlined below, would be undermined by allowing parties who agree to arbitration to challenge arbitration decisions in court. Court review was not available to plaintiff under Pennsylvania law, and he therefore did not receive all the process he was due.

11

Summary judgment will therefore be denied the defendants and granted to the plaintiffs on this claim.

### B. Substantive Due Process

Defendants seek summary judgment on plaintiff's substantive due process claim. They argue that the loss of the towing contract is a state-created property interest and not the sort of interest protected by substantive due process. Plaintiff's mere expectation of continuing in his towing contract is not the sort of fundamental interest protected by substantive due process. Defendants thus argue that summary judgment should be entered for them on plaintiff's substantive due process claim.

The Third Circuit Court of Appeals has emphasized that "'not all property interests worthy of procedural due process protection are protected by the concept of substantive due process.'" Gikas v. Wash. Sch. Dist., 328 F.3d 731, 732 (3d Cir. 2003) (quoting Reich v. Beharry, 883 F.2d 239, 244 (3d Cir. 1989)). To qualify for such protection, the property interest must be "'fundamental' under the United States Constitution." Id. The Third Circuit has found that tenured university employment is not protected by the substantive component of the due process clause, concluding that "we view public employment as more closely analogous to those state-created property interests that this Court has previous deemed unworthy of substantive due process than to venerable common-law rights of real property ownership." Nicholas, 227 F.3d at 143. The Court adopted the Supreme Court's warning against making "the federal judiciary . . . a general court of review for state employment decisions."

12

Id.

The court finds that plaintiff cannot maintain a substantive due process claim based on these facts. Plaintiff's complaint is that he was unfairly denied his towing contract and thus employment by the city because of an arbitrary decision from Defendant Trimble. Plaintiff had been warned of unacceptable performance on his towing contract, but he had responded to any complaints and delivered appropriate performance in the period after his warning. Nevertheless, the defendants cancelled his towing contract, possibly because of the political interests and opinions of city officials. This case is like Nicholas v. Pennsylvania State University, 227 F.3d 133 (3d Cir. 2000). In Nicholas, the plaintiff, a tenured professor, contended that the defendant had fired him because of personal animus, not performance. The court found that plaintiff's "tenured public employment" was not "a fundamental property interest entitled to substantive due process protection." Nicholas 227 F.3d at 142. Here, plaintiff had a defined-term towing contract which included a provision for termination based on unacceptable performance; the contract lacked even the tenure protections found inadequate in Nicholas. Plaintiff's contract thus created a property interest located solely in state contract law, not the sort of fundamental property interest protected by substantive due process. Summary judgment for the defendants is therefore appropriate on this claim.

### C. Contract Claim

Defendants contend that plaintiff's breach of contract claim must also be

dismissed. Plaintiff, defendants argue, agreed not to sue over the decision rendered by the arbitrator under the terms of the contract. Here, therefore, the question is whether the court should enforce the parties' agreement to arbitrate disputes over the plaintiff's performance rather than litigate them. The contract's arbitration provision states that "[t]he Contractor agrees not to sue the City for any discharge pursuant to this paragraph or otherwise look to collect damages from the City as a result of the Contractor's discharge." (Towing Contract at ¶ 15p). Pennsylvania courts have found that "'[c]ontracts that provide for arbitration are valid, enforceable and irrevocable, save upon such grounds as exists in law or in equity for revocation of any other type of contract.'" Ambridge Water Authority v. Columbia, 328 A.2d 498, 549 (Pa. 1974) (quoting Mendelson v. Shrager, 248 A.2d 234, 235 (Pa. 1968)). Thus, "[w]here parties of equal bargaining positions mutually agree that their future disputes, if they arise, be determined by arbitration, they should be bound by that provision when the dispute in fact arises and not be permitted to avoid the consequences of such action by specious challenges which allegedly questions [sic] the validity of the contract itself." Id. at 501.

Plaintiff argues that the arbitration provision should not be enforced because the arbitrator in this case, Defendant Trimble, did not operate in the neutral fashion required by the contract. Trimble worked for the mayor of Wilkes-Barre, took complaints about the defendant in an informal and arbitrary fashion, and did not perform his job as an arbitrator should. Plaintiff, therefore, does not attack the

validity of the contract itself, just Trimble's performance under it.

The court finds the arbitration provision in the contract valid. As consideration for signing the contract, plaintiff bargained away his right to sue over the decision of the arbitrator in Pennsylvania courts.  Plaintiff's complaint is not about whether the arbitration provision itself is valid, or wether he entered into that provision knowingly, but about whether Trimble's decision was fair.  The contract clearly states that the arbitrator was to be a neutral party, but it also names Trimble as that neutral party. Plaintiff got what he bargained for when Trimble rendered a decision on whether the Defendant City could terminate the contract.  Plaintiff's complaint is merely an attempt to have a court void an arbitrator's decision with which he disagrees.  Since the purpose of arbitration is to spare both parties the time and expense required to litigate disputes, and there is no evidence that the arbitration agreement itself was invalid, the court will decline to overturn the results of the parties' bargained-for dispute resolution.  The defendants will receive summary judgment on the plaintiff's breach of contract claim.

**Conclusion**

The court will grant summary judgment to the plaintiff on his procedural due process claim. Plaintiff had a protected property interest in his towing contract, and he did not receive the process he was due.  The court will, however, grant summary judgment to the defendants on plaintiff's substantive due process claim.  The contract did not represent the sort of fundamental interest protected by substantive

due process.  The court will also grant defendants summary judgment on plaintiff's state-law contract claim.  Plaintiff agreed to settle disputes over the contract through arbitration, and therefore as a matter of Pennsylvania law cannot dispute the arbitrator's decision in the courts.  The court will schedule a hearing before a jury on the question of damages.  An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RONALD KADLUBOSKI,** | : | No. 3:06cv2062 |
| **Plaintiff** | : | |
| | : | (Judge Munley) |
| **v.** | : | |
| | : | |
| **RONALD TRIMBLE, and** | : | |
| **CITY OF WILKES-BARRE,** | : | |
| **Defendants** | : | |

## ORDER

**AND NOW**, to wit, this 15th day of September 2008, the plaintiff's motion for summary judgment (Doc. 26) is hereby **GRANTED**. The defendants' motion for summary judgment (Doc. 31) is hereby **GRANTED** in part and **DENIED** in part. The defendants' motion for summary judgment on plaintiff's substantive due process and state-law contract claim is **GRANTED**. The defendants' motion for summary judgment on plaintiff's procedural due process claim is **DENIED**.

                              **BY THE COURT:**


                              **s/ James M. Munley**
                              **JUDGE JAMES M. MUNLEY**
                              **UNITED STATES DISTRICT COURT**